United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KEITH RAY CURTIS, | ) | No. C 02-3922 SBA (PR) |
| Petitioner, | ) | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | ) | |
| A. P. KANE, Warden, | ) | |
| Respondent. | ) | |

**INTRODUCTION**

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 concerning his 2000 conviction in San Mateo County Superior Court (hereinafter "Superior Court").  Warden A. P. Kane (hereinafter "Respondent") opposes the petition.  Petitioner filed a traverse.  For the reasons discussed below, the petition will be DENIED as to all claims.

**BACKGROUND**

**I.    Case History**

On December 2, 1999, Petitioner was charged by information filed in Superior Court with four counts of first-degree burglary (Cal. Penal Code § 460(a) -- Counts One, Two, Nine and Ten), receiving stolen property (Cal. Penal Code § 496(a) -- Count Three), possession of burglars' tools (Cal. Penal Code § 466 -- Count Four), failure to register as a sex offender (Cal. Penal Code § 290(a)(1) -- Count Five), possession of ammunition by a felon (Cal. Penal Code § 12316(b)(1) -- Count Six), and two counts of second-degree burglary (Cal. Penal Code § 460(b) -- Counts Seven and Eight).  The information further alleged that he was ineligible for probation (Cal. Penal Code § 1203(e)(4)).  Under California's Three Strikes law,[1] Petitioner

_____

[1] California's Three Strikes law appears in California Penal Code § 667(b)-(i).  The heart of the Three Strikes law is § 667(e), which prescribes increased terms of imprisonment for defendants who have previously been convicted of certain "violent" or "serious" felonies.  Under subdivision (e), a third strike defendant (with two or more prior felony convictions) receives an indeterminate

allegedly had suffered two prior strikes (Cal. Penal Code §§ 667(a), 1170.12(c)(2)) and four prior prison terms (Cal. Penal Code § 667.5(b)).

Petitioner was arraigned on December 7, 1999, and he pleaded not guilty.  He also denied the attendant enhancements.

An amended information was filed on March 29, 2000 changing the allegations to three prior strikes and two prior prison terms.

Petitioner's jury trial commenced on October 3, 2000.  After the trial court denied his motion to exclude his statements to the police, Petitioner waived his right to a jury trial and agreed to submit one first-degree burglary charge (Count Two) and two prior strike allegations (a 1986 conviction for lewd and lascivious conduct and a 1990 conviction for burglary) to the court.  The remaining charges were dismissed, and the remaining allegations were stricken.

On October 4, 2000, the trial court found Petitioner guilty of first-degree burglary, found true the two prior strike allegations, and sentenced him to state prison for twenty-five years to life pursuant to California's Three Strikes law.

Petitioner raised two grounds for relief on direct appeal.  Petitioner argued that his admissions to police should have been excluded because they were elicited with false promises of leniency and thus were involuntarily made, in violation of the Fourteenth Amendment.  He also argued that admissions he made after he invoked his right to remain silent were elicited in violation of his Fifth and Fourteenth Amendment rights and should have been excluded. Petitioner's direct appeal was rejected by the California Court of Appeal on October 9, 2001. See Resp't Ex. F.  The California Supreme Court rejected Petitioner's petition for review on December 19, 2001.  See Resp't Ex. H.

term of life imprisonment, which includes a minimum term.  The minimum term for a third strike defendant is the greatest of (i) "[t]hree times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions," (ii) twenty-five years imprisonment in the state prison, or (iii) "[t]he term determined by the court pursuant to Section 1170 for the underlying conviction," including any applicable enhancements.  Cal. Penal Code § 667(e)(2)(A).  These provisions apply in addition to any other enhancement or punishment provisions which may apply.  Cal. Penal Code § 667(e).

2

Petitioner subsequently filed a petition for a writ of habeas corpus in the Superior Court raising three additional grounds for relief. First, he argued that the trial court erroneously increased Petitioner's sentence based on convictions imposed in 1986 and 1990, both of which derived from plea agreements. Petitioner argued that enhancing his current sentence based on those convictions amounted to a breach of the plea agreements that led to those convictions. Second, he argued that his sentence of twenty-five years to life in prison was grossly disproportionate to the crime of burglary, in violation of the Eighth Amendment. Third, he argued that he received ineffective assistance of counsel because his appellate attorney failed to raise the Eighth Amendment claim on direct appeal. His state habeas petition was denied by the Superior Court in a reasoned opinion on April 24, 2002. See Resp't Ex. I. The California Court of Appeal summarily denied his habeas petition on May 15, 2002. See Resp't Ex. K. On July 17, 2002, the California Supreme Court denied the petition for review without citation. See Resp't Ex. M.

On August 15, 2002, Petitioner filed the instant petition for a writ of habeas corpus raising the aforementioned five claims from his direct appeal and state habeas petition.

Respondent filed his Answer and Memorandum of Points and Authorities in Support of Answer to Petition for Writ of Habeas Corpus (hereinafter "Answer") on October 25, 2002 (docket nos. 8, 9). Petitioner filed his Traverse on December 13, 2002 (docket no. 13). The matter has been fully briefed and is now ready for review on the merits.

**II.   Facts**

The following facts are drawn from the appellate opinion.

[Petitioner] was convicted of first[-]degree burglary on October 20, 1999, of a residence at 2712 Westmoreland in unincorporated Redwood City. The statement of facts taken from the preliminary hearing will therefore be limited to the facts surrounding this offense.

On October 20, 1999, around 10:00 a.m., Cecilia Alvarez was inside her San Mateo County home when she heard a knock on the front screen door. She looked through the peephole and heard someone walking to the side of the house and then trying to open the side door. She called the police. While she was on the phone with the police, she heard someone walking around outside, then a loud noise, and saw a man in front of the kitchen window looking at her. The man asked if the car in the driveway was for sale. She did not respond, but continued

3

talking to the police dispatcher on the phone and described the intruder.

San Mateo County Deputy Sheriff David Titus responded to the call from the Alvarez residence and observed [Petitioner], who matched the description of the suspect. Titus searched the backpack [Petitioner] was carrying and found numerous items of jewelry, a screwdriver, camcorder, and some clothing. Inside the camcorder bag was an extended warranty that had the Cerrillos' name and address. The Cerrillos lived at 2712 Westmoreland.

Titus went to the Cerrillo residence around 11:00 a.m. and spoke with the two Cerrillo children, who said they had been sleeping when the officers arrived. The parents came home and identified the jewelry, the backpack and the camcorder. Titus looked around the house and found that the master bedroom had been ransacked. Drawers had also been opened in the living room and front bedroom. Titus found a Nike Swoosh shoe imprint in the dirt in two different places in the backyard.

San Mateo County Sheriff's Detective Gregory Eatmon spoke with [Petitioner] on October 20, 1999, and advised him of his *Miranda*[2] rights. [Petitioner] told Eatmon he had entered the Cerrillos' residence through a side bathroom window. He observed two children sleeping in one bedroom, and removed jewelry, a camcorder, and a backpack from the master bedroom. [Petitioner] chose the residence because he thought the occupants were Hispanic, and assumed they were illegal [aliens] and would therefore store money inside their residence.

People v. Curtis, No. A092781, slip op. at 2-3 (Cal. Ct. App. Oct. 9, 2001) (Resp't Ex. F) (footnote added).

## DISCUSSION

### I.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law, as determined by the Supreme Court of the United

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

4

United States District Court
For the Northern District of California

States" refers to "the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state court decision." Williams (Terry) v. Taylor, 529 U.S. 362, 412 (2000); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Alvarado v. Hill, 252 F.3d 1066, 1068-69 (9th Cir. 2001). Section 2254(d)(1) "restricts the source of clearly established law to the [Supreme] Court's jurisprudence." Williams, 529 U.S. at 412.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant [s]tate court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. The objectively unreasonable standard is not a clear error standard. See Andrade, 538 U.S. at 63 (rejecting the Ninth Circuit's use of clear error standard in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)). After Andrade, "[t]he writ may not issue simply because, in our determination, a [s]tate court's application of federal law was erroneous, clearly or otherwise." Id. at 75-76. While the 'objectively unreasonable' standard is not self-explanatory, at a minimum "it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them." Id. at 75.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and

United States District Court

For the Northern District of California

1  convincing evidence.  28 U.S.C. § 2254(e)(1).  This presumption is not altered by the fact that

2  the finding was made by a state court of appeals, rather than by a state trial court.  See Sumner

3  v. Mata, 449 U.S. 539, 546-47 (1981); see also Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir.

4  2001), amended by 253 F.3d 1150 (9th Cir. 2001).

5       Where, as here, the California Supreme Court denies review of Petitioner's claim

6  without explanation, the Court looks to the last reasoned state court decision in conducting

7  habeas review.  See Shackleford v. Hubbard, 234 F.3d 1072, 1079 (9th Cir. 2000) (citation

8  omitted), cert. denied, 534 U.S. 944 (2001) (the district court "looks through" the unexplained

9  California Supreme Court decision to the last reasoned state court decision).  In the instant case,

10  the California Court of Appeal rendered the last reasoned state court decision as to Petitioner's

11  claim of improper admission of his pretrial confession.  The Superior Court was the only court

12  to issue a written decision analyzing Petitioner's claims raised in his state habeas petition.  Both

13  the California Court of Appeal and the California Supreme Court summarily denied his habeas

14  petitions without issuing a reasoned decision.  Therefore, the Court looks to the analysis of the

15  Superior Court in evaluating Petitioner's claims involving California's Three Strikes law, a

16  violation of the Eighth Amendment, and ineffective assistance of appellate counsel.  See Lajoie

17  v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

18       Habeas relief is warranted only if the constitutional error at issue is structural error or

19  had a "substantial and injurious effect or influence in determining the jury's verdict."  Penry v.

20  Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

21  Under this standard, habeas petitioners may obtain plenary review of their constitutional claims,

22  but they are not entitled to habeas relief based on trial error unless they can establish that it

23  resulted in "actual" prejudice.  Brecht, 507 U.S. at 637.

24  **II.   Exhaustion**

25       Prisoners in state custody who wish to challenge collaterally in federal habeas

26  proceedings either the fact or length of their confinement are required first to exhaust state

27  judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

28

United States District Court

For the Northern District of California

highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  It is undisputed that Petitioner exhausted his state court remedies as to the claims raised in this proceeding.

## III.   **Legal Claims**

Petitioner raises five claims for relief under § 2254 which can be fairly classified into four general categories for purposes of discussion and analysis: (A) improper admission of his pretrial confession (Claims 1 and 2); (B) imposition of the three strikes sentence violated the terms of his prior plea agreements (Claim 3); (C) his Eight Amendment claim that his sentence of twenty-five years to life in prison constituted cruel and unusual punishment (Claim 4); and (D) ineffective assistance of appellate counsel for failing to raise his Eighth Amendment claim on direct appeal (Claim 5).

### A.   **Improper Admission of Pretrial Confession**

#### 1.   **Background**

Petitioner claims that his pretrial confession was inadmissible because it was coerced and obtained in violation of his Miranda rights.  Petitioner specifically claims that his admissions should have been excluded because they were obtained by false promises of leniency and also because he invoked his right to remain silent.  (Pet. at 5, Ex. A.)  Therefore, Petitioner alleges that the trial court's ruling to admit Petitioner's pretrial confession was "prejudicial error."  (Traverse at 4.)

The appellate court summarized the facts underlying Petitioner's pretrial confession claims as follows:

> The police interviewed [Petitioner] on October 20, 1999, and again on October 22, 1999.  The October 20 interview was conducted by Detectives Greg Eatmon and Ken Taylor of the San Mateo County Sheriff's Office and was videotaped.  The second interview, on October 22, was conducted by Detective Eatmon and by Detective Dawn Jones of the California Highway Patrol and was audiotaped [sic].  Transcriptions of the tapes were also admitted into evidence.
>
> [Petitioner] was already under arrest at the time of the first interview and was advised of his *Miranda* rights.  [Petitioner] was asked if he understood those

7

rights and answered affirmatively.  He was not, however, asked if he wished to waive those rights, but he did continue talking.  At the beginning of the first interview, Detectives Eatmon and Taylor told [Petitioner] they were sex crimes investigators; that they "[do not] do property crimes," only sex crimes.  They continued to make such comments, indicating that they were sex crimes investigators and were trying to determine if [Petitioner] had committed any sex crimes at the residences where [the] burglaries had occurred, and that they wanted to eliminate him from being involved in sexual behavior in the house.  The detectives' references to sex crimes and wanting to determine whether [Petitioner] was just there to take property were made before [Petitioner] admitted having taken property from the Westmoreland residence.  The detectives told [Petitioner] they knew he was in the house on Westmoreland and they just wanted to know why; they knew [Petitioner] was caught with property from the house.  [Petitioner] then admitted entering the house and taking the property.

Later in the interview the detectives exhorted [Petitioner] to tell them about all of the burglaries he had committed because he might get a "package."  They also indicated that they would forward a favorable report to the district attorney who might put together a package deal.  Additionally, the detectives told [Petitioner] that if he "clear[ed] up the cases" for them, they would tell the district attorney he had done so and would ask the district attorney to let the judge know, "so the Judge knows what good [Petitioner has] done."

During the first interview, [Petitioner] made a number of comments that he contends indicated he was invoking his right to remain silent.  At one point he said, "I'm through talking," but he then kept talking and complaining that he had already told them what he had done that morning.  [Petitioner] also made statements, such as "[j]ust take me to the jailhouse," "write it up," and "well we gonna keep on talkin'?"  All the while, however, he continued talking to the detectives.

Resp't Ex. F at 3-4.

## 2. <u>Applicable Federal Law</u>

Involuntary confessions are inadmissible under the Fourteenth Amendment.  <u>Blackburn v. Alabama</u>, 361 U.S. 199, 207 (1960).  To determine the voluntariness of a confession, the court must consider the effect that the totality of the circumstances had upon the will of the defendant.  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226-27 (1973).  "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne."  <u>United States v. Leon Guerrero</u>, 847 F.2d 1363, 1366 (9th Cir. 1988) (citing <u>Haynes v. Washington</u>, 373 U.S. 503, 513-14 (1963)).  Absent police misconduct causally related to the confession, there is no basis for concluding that a confession was involuntary in violation of the

8

Fourteenth Amendment.  <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986).

Statements made in violation of a defendant's right to cut off questioning are inadmissible under the Fifth Amendment.  "Once warnings have been given, the subsequent procedure is clear.  If the individual indicates in any manner, at any time prior or during to questioning, that he wishes to remain silent, the interrogation must cease."  <u>Miranda</u>, 384 U.S. at 473-74.  Without the right to cut off questioning, the "setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has once been invoked."  <u>Id.</u> at 474.  Ultimately, the "admissibility of statements obtained after the person in custody has decided to remain silent depends under <u>Miranda</u> on whether his 'right to cut off questioning' was 'scrupulously honored.'"  <u>Michigan v. Mosley</u>, 423 U.S. 96, 104 (1975).

### 3.   <u>Analysis</u>

In this case, the state courts made findings from the facts adduced at the pretrial hearing on Petitioner's motion to exclude his confession and reasonably determined that Petitioner's confession was the product of an essentially free and unconstrained choice.  After a careful review of the record and relevant cases, the Court is satisfied that the state courts' findings were not "objectively unreasonable."  <u>Andrade</u>, 538 U.S. at 63.

A federal court may grant the writ if it concludes that a state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding."  28 U.S.C. § 2254(d)(2).  A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges the state court's fact-findings based entirely on the state court record, whereas section 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court.  <u>See Taylor v. Maddox</u>, 366 F.3d 992,

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

999-1000 (9th Cir. 2004).  In <u>Taylor</u>, the Ninth Circuit established a two-part analysis under sections 2254(d)(2) and (e)(1).  <u>Id.</u>  First, federal courts must undertake an "intrinsic review" of the state court's fact-finding process under the "unreasonable determination" clause of section 2254(d)(2).  <u>Id.</u> at 1000.  The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings.  <u>Id.</u>  Once the state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under section 2254(e)(1).  <u>Id.</u>  According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by the petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state court finding is in error.  <u>See</u> 28 U.S.C. § 2254(e)(1).  "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the "unreasonable determination" standard of section 2254(d)(2)."  <u>Taylor</u>, 366 F.3d at 1000.  The relevant question under section 2254(d)(2) is if an appellate panel applying the normal standards of appellate review, could reasonably conclude whether or not a state court finding is supported by the record.  <u>Lambert v. Blodgett</u>, 393 F.3d 943, 978 (9th Cir. 2004).

At the hearing on Petitioner's motion to exclude his statements, the trial court reviewed the challenged transcripts and videotapes before making its finding that Petitioner's admissions were voluntary.

> Having reviewed the statements and listened to and watched the videotape of the October 20 statement, it is very clear to me that these statements were not coerced.
>
> This discussion early on in the interview about his being a [Section] 290 registrant,[3] and the officers['] ploy or device in telling him that they were only interested in sex crimes, and, suggesting that they were not at all interested in the burglaries so long as he was able to tell them that there weren't any sex offenses being contemplated there, obviously was a ploy.

---

[3]   California Penal Code § 290, entitled "Registration of sex offenders," requires convicted sex offenders to register with the chief of police of their city of residence.

[Petitioner] makes it abundantly clear throughout the interview that he didn't fall for it.

He [sic] repeatedly throughout that interview, the officers would try to suggest to him that they were only interested in sex offenses, and he would laugh and point out to them that that was curious, if they were after sex offenders, how come they kept asking him about burglaries.

And in his soliloquy at the end, when he's alone in the interview room, he makes it quite clear, as he has throughout the interview, that he knows what they are up to.

It is, [sic] there's no basis I think to find here that his will was overborne by theirs. He recognized the tactic for what it was.

And, there is simply no basis to exclude his statements on that theory.

(RT of 10/2/2000 to 10/4/2000 at 24-25) (footnote added).

The trial court further found that Petitioner's statements were not obtained in violation of

Miranda because he did not invoke his right to remain silent:

The [sic], as to an invocation of his right to remain silent, that never occurs.

He talks about the possibility of stopping talking a couple of times, but he scarcely draws a breath before he goes right on talking.

What one doesn't see from the transcripts is how fast these questions and answers are going back and forth.

At, [sic] for example, at page 39, which is one of the illustrations of this, it's page 79 of the People's number 3, when you listen to that part of the discussion on the videotape, they are basically going back and forth a mile a minute.

And, at one point he had an answer.  [Petitioner] says, I'm through talking.  The officer starts, gets a couple of words into the next sentence, and [Petitioner] interrupts the officer and says, quotes, or this is from my notes, so it's probably not an exact quote, but he says, in effect, you can keep talking about the same old thing I just told you.

The officer follows that up with a question about [Petitioner] going to the service league.  [Petitioner] answers that; and, they are off to the races.

He never stops talking.  He never suggests that he is serious about being through talking.

And, at least one other time, during this interview, he indicates he's getting close to stopping talking.  He says, I'm only going to say this one more time.

Let's see if I can find that in my notes.

. . . it was actually earlier than that in the interview.  It was about page -- It was on

11

1
2

page fifty of the interview, where, the example I was thinking of, where [Petitioner] said that he was going to clam up in a few minutes because the officers were asking him such stupid questions.

3
4
5

And that they were going over the same material.  But he didn't stop talking then earlier.  He went on and on.  The whole tone of this interview is, gives one the feeling that [Petitioner] didn't have any interests at all in terminating that interrogation.

6
7

He was more than willing to keep talking to the officers.  Indeed, once the officers left him alone in the room he continued to talk for many minutes on the same subjects, out loud, with apparently some awareness he was under surveillance.

8
9

Because at one point, he was talking out loud to himself about the camera following his every move.  And, this is very obviously an individual who didn't have any interest in stopping talking at all.

10

So that that theory does not work for [Petitioner].

11

So the motion to exclude the statements on those grounds is denied.

12

(Id. at 25-27.)

13

The appellate court affirmed the trial court's ruling and specifically found that no

14

promises of leniency were made to Petitioner, and that Petitioner did not invoke his Miranda

15

right to cut off questioning before admitting his involvement in the burglary.

16

Petitioner argues that the "trial court erred in determining that his admissions were

17

voluntary and admissible." (Pet. at 31.)  Petitioner stresses that "[o]utside of [his] confession,

18

the only evidence of [Petitioner's] commission of the Westmoreland Avenue burglary was

19

circumstantial." (Id. at 32.)  He argues that "[his] admissions were not the result of an

20

"essentially free and unconstrained choice" by [Petitioner] to confess, but rather, were the result

21

of improper promises of leniency which motivated [Petitioner] to make the admissions." (Id. at

22

31.)  Moreover, Petitioner argues that "in finding that [Petitioner] did not invoke his right to

23

remain silent, the trial court failed to consider the additional comments made by [Petitioner],

24

and his demeanor throughout the interview, which at the very least implied the invocation of

25

this right because [his demeanor was] reasonably inconsistent with a present willingness to

26

discuss the case freely and completely." (Id. at 36.)  Thus, Petitioner claims that "[a]ny

27

statements made by [Petitioner] after he impliedly invoked his right to remain silent, which first

28

12

occurred when he said, 'Just take me to jailhouse. . . ,' (CT 86:1-2), and certainly any statements made by [Petitioner] after he expressly invoked his right to remain silent (CT 122:26, 123:6-10) were involuntary and should have . . . been excluded from evidence." (Pet. at 40-41.) Respondent disagrees and argues that this Court should defer to the state courts' determination that Petitioner's confession was voluntary and that he did not ask to have the interview terminated by invoking his right to remain silent.  (Answer at 5-10.)  Because Petitioner is challenging the state courts' determination based on the state court record, the Court will conduct its analysis under Section 2254(d)(2) and undertake an "intrinsic" review of the state courts' processes.

The factfinding processes used by the state courts to determine that Petitioner's admissions were properly admitted into evidence were reasonable.  The trial court conducted an evidentiary hearing on Petitioner's motion to exclude his statements.  The appellate court affirmed the trial court's ruling in a reasoned decision.  The Court concludes that Petitioner had a full, fair and complete opportunity to present evidence in support of his claim to the state courts, of which he took full advantage.  Therefore, the Court finds that the state courts' factfinding processes were intrinsically reasonable.

Upon finding that the state courts' factfinding processes survive an intrinsic review, the Court now turns to the state courts' findings of fact, which are "dressed in a presumption of correctness."  Taylor, 366 F.3d at 1000.  These findings of fact are presumed correct unless Petitioner rebuts the presumption with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Pollard v. Galaza, 290 F.3d 1030, 1035 (9th Cir. 2002); see also Rupe v. Wood, 93 F.3d 1434, 1444 (9th Cir. 1996) (deferring to state appellate court's finding that challenged statement did not constitute threat or promise).

Petitioner disagrees with the state courts' findings and argues that the underlying facts can be interpreted differently.  He claims that "[t]he transcripts of the videotape of the police interview, and the videotape itself, do not support the trial court's conclusion that [Petitioner]

13

was aware of Detectives Eatmon and Taylor's 'ploy.'"[4]  (Pet. at 22.)  However, Petitioner's arguments do not show that the state courts' findings are objectively unreasonable.  See 28 U.S.C. § 2254(d)(2); cf. Williams, 529 U.S. at 409 (federal court making "unreasonable application" inquiry under § 2254(d)(1) should ask whether the state court's application of clearly established federal law was "objectively unreasonable").  The state courts' findings are amply supported by the record.

After an independent review of the record, the Court is satisfied that the state courts' findings are at least reasonable and therefore binding in these proceedings.  See 28 U.S.C. § 2254(d)(2); cf. Early v. Packer, 537 U.S. 3, 10 (2002) (in context of § 2254(d)(1), noting that even if federal court believed that there was jury coercion, "it is at least reasonable to conclude that there was not, which means that the state court's determination to that effect must stand").

Furthermore, the state courts' findings -- that no improper promises of leniency produced Petitioner's confession -- is a reasonable application of pertinent federal law under § 2254(d)(1).  See United States v. Willard, 919 F.2d 606, 608 (9th Cir. 1990), cert. denied, 502 U.S. 872 (1991) (Police generally may offer to tell the prosecutor about the defendant's cooperation and suggest that cooperation may increase the likelihood of a more lenient sentence.); Guerrero, 847 F.2d at 1366 (interrogating agent's promise to inform prosecutor about suspect's cooperation does not render subsequent statement involuntary, even when accompanied by promise to recommend leniency or by speculation that cooperation will have a positive effect); Amaya-Ruiz v. Stewart, 121 F.3d 486, 494 (9th Cir. 1997) (encouraging suspect to tell truth not coercive conduct that would render a subsequently obtained statement involuntary); cf. United

---

[4]  Petitioner has attached a copy of his petition for review to the California Supreme Court to his federal petition, which includes a "motion to augment the record so as to include the videotapes of the first interview." (Pet. at 22 n.3.)  The Court will construe Petitioner as making the same motion to augment in his federal habeas petition.  The trial court had the benefit of reviewing the transcripts and videotapes from both interviews, which were presented to the court and marked as exhibits during the hearing on the motion to exclude statements.  Resp't Ex. A at 41-42 (CJIS record of 10/02/2000 proceedings in San Mateo County Superior Court).  Petitioner is not asking to augment the record with new evidence with which to rebut the trial court's decision, which is presumed to be correct.  See 28 U.S.C. § 2254(e)(1).  Therefore, the Court DENIES Petitioner's motion to augment the record.

States v. Haswood, 350 F.3d 1024, 1029 (9th Cir. 2003) (reciting potential penalties or sentences, including potential penalties for lying to interviewer, not coercive conduct that would render a subsequently obtained statement involuntary).  Similarly, the state courts' determination -- that there was no violation of Petitioner's Miranda right to cut off questioning because Petitioner did not invoke his right before admitting his involvement in the burglary -- is also a reasonable application of federal law.  See Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983) (authorities may continue interrogation if suspect himself voluntarily initiates further communication).

Importantly, the state courts' ultimate determination that Petitioner's will was not overborne was not an unreasonable application of clearly established Supreme Court precedent as set forth in Schneckloth and its progeny.  See 28 U.S.C. § 2254(d)(1).  After reasonably rejecting Petitioner's claims of promises of leniency, and of a violation of his Miranda right to cut off questioning, the state courts found that the totality of the circumstances persuaded it that Petitioner's confession was not coerced.   The trial court denied Petitioner's motion to exclude his statements based on the court's finding that Petitioner "did not fall for" the officers' "ploy" of telling him that they were only interested in determining if Petitioner had committed any sex offenses.  (RT of 10/2/2000 to 10/4/2000 at 24-25.)  The appellate court specifically noted that "[t]he record of [Petitioner's] statement shows he knew the detectives were interested in property crimes and that he had been caught red-handed with goods taken from the burglary to which he then admitted."  Resp't Ex. F at 7.  The state courts' determination that Petitioner's confession was not coerced must stand.  Accord Clark v. Murphy, 331 F.3d 1062, 1073 (9th Cir. 2003) (holding that state court's determination that interrogation was non-coercive, where suspect was interrogated over five-hour period in six-foot by eight-foot room without water or toilet [but never requested water or use of a toilet], was objectively reasonable application of Schneckloth).  As noted earlier, even if the Court agreed with Petitioner that there was coercion, it is at least reasonable to conclude, based on the record, that there was none.  Consequently, the state courts' determination to that effect must stand.  See Early, 537 U.S. at 10.

15

United States District Court

For the Northern District of California

Accordingly, Petitioner is not entitled to federal habeas relief on his claim of improper admission of his pretrial confession.[5]

**B.    Sentence Under California's Three Strikes Law Violated Prior Plea Agreements**

**1.    Background**

Petitioner argues that the imposition of an enhanced sentence for his current conviction under California's Three Strikes law violated the terms of his prior plea agreements.  (Pet. at 5, Ex. B.)  He specifically argues that "[t]he district attorney's 'attack' to strike out [Petitioner] pursuant to [Section] 1170.12 is in direct violation of [his] previous plea bargain agreement[s]."  (Id.)  Therefore, based on the alleged violation of the prior plea agreements, Petitioner claims that his current conviction and sentence are invalid.

In arguing that his current sentence is invalid, Petitioner seems to be (1) challenging the validity of his prior expired convictions, which were used as enhancements, and (2) claiming that the use of his prior convictions to enhance his current sentence is a violation of the Double Jeopardy Clause.

A petitioner challenging in habeas the validity of an expired conviction which he maintains is being used as a predicate or enhancement to his current confinement or sentence satisfies the custody requirement, even if he is no longer in custody for the prior conviction. Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 401-02 (2001).  However, the Supreme Court has determined that the expired conviction itself cannot be challenged in an attack upon the later sentence it was used to enhance.  See Coss, 532 U.S. at 403-04 (prior

---

[5] Petitioner is also precluded from federal habeas relief because it does not appear that the admission of his confession, even if coerced or obtained in violation of Miranda, had a "'substantial and injurious effect or influence'" on the trial court finding him guilty of the burglary.  Pope v. Zenon, 69 F.3d 1018, 1025 (9th Cir. 1995) (quoting Brecht, 507 U.S. at 637).  Petitioner was caught with stolen property in the same area as the burglary and within a short period of time after its removal from the victims' residence.  He also possessed a stolen screwdriver, which police determined was the same tool the burglary suspect used to gain entry.  Furthermore, Petitioner was identified as the suspect attempting to gain entry into another home in that area.  Therefore, even if the trial court erred in admitting his pretrial confession, such an error was harmless in light of the overwhelming physical evidence tying Petitioner to the burglary for which he was convicted.

conviction cannot be challenged in a § 2254 petition); <u>Daniels v. United States</u>, 532 U.S. 374, 382-83 (2001) (same).  With respect to state convictions, the Supreme Court stated:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the [petitioner] failed to pursue those remedies while they were available (or because the [petitioner] did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the [petitioner] generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

<u>Coss</u>, 532 U.S. at 403-04 (citation omitted).  The only exception to this rule is for a claim that the prior conviction was unconstitutional because there was a failure to appoint counsel in violation of the Sixth Amendment right to counsel as set forth in <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963).  <u>See Coss</u>, 532 U.S. at 404; <u>Daniels</u>, 532 U.S. at 382.  Such a claim is not raised here, thus, Petitioner's prior expired convictions cannot be challenged.  Therefore, the Court will focus on Petitioner's claim of a violation of the Double Jeopardy Clause.

In rejecting his claim, the Superior Court also construed Petitioner's claim as a violation of the Double Jeopardy Clause, stating:

> Petitioner claims that the plea agreements which gave rise to his prior convictions were violated by the sentence he received in his current matter. Petitioner appears to specifically claim that the Prosecution violated the terms of those agreements and Penal Code § 1192.5 when it charged him with those prior convictions in the present case in order to increase his potential sentence. Petitioner contends that the alleged violation of the prior plea agreements makes his conviction and sentence in the instant case invalid as well.

> Petitioner's argument is without merit.  It has been held that the "Three Strikes" law does not operate retroactively, and that it does not violate double jeopardy. (See <u>People v. Sipe</u> (1995) 36 Cal.App.4th 468, and <u>People v. White Eagle</u> (1996) 48 Cal.App.4th 1511 [criticized on other grounds in <u>People v. Milton</u> (1997) 55 Cal.App.4th 365].)  Therefore, it was not a violation of the previous plea agreements to use the prior convictions obtained in those agreements to enhance the Petitioner's sentence in a case involving new and separate offenses.

> In addition, since it was not a violation of the previous plea agreements to sentence Petitioner under the "Three Strikes" law (Penal Code § 1170.12), his conviction and sentence in the present case were also valid.  Consequently, he is not entitled to relief on this ground.

Resp't Ex. I at 2.

**2.   Applicable Federal Law**

17

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb". U.S. Const. amend. V. In <u>Benton v. Maryland</u>, 395 U.S. 784 (1969), its protections were held applicable to the states through the Fourteenth Amendment. The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense. <u>See</u> <u>Witte v. United States</u>, 515 U.S. 389, 395-96 (1995); <u>United States v. DiFrancesco</u>, 449 U.S. 117, 129 (1980); <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969); <u>Staatz v. Dupnik</u>, 789 F.2d 806, 808 (9th Cir. 1986).

**3.    Analysis**

The Superior Court's rejection of this claim was not an unreasonable application of federal law. Both the Supreme Court as well as the Ninth Circuit Court of Appeals have found that the use of prior convictions to enhance sentences for subsequent convictions does not violate the Double Jeopardy Clause. <u>See</u> <u>Spencer v. Texas</u>, 385 U.S. 554, 560 (1967) (upholding use of prior convictions to enhance sentences for subsequent convictions even if in a sense defendant must relitigate in sentencing proceeding conduct for which he was already tried). Any such challenge is wholly without merit. <u>See</u> <u>Jackson v. Nelson</u>, 435 F.2d 553, 553 (9th Cir. 1971) (dismissing contentions of equal protection, bill of attainder, double jeopardy and ex post facto against recidivist statute as meritless). Therefore, the Superior Court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d).

Additionally, in his Traverse, Petitioner alleges that the unconstitutional application of California's Three Strikes law to his pre-1994 prior offenses violates the Ex Post Facto clause and the Due Process clause. (Traverse at 22.) A traverse is not the proper pleading to raise additional grounds for relief, therefore, issues raised for the first time in a traverse should not be considered. <u>See</u> <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507-08 (9th Cir. 1994). Furthermore, the only claim in his state habeas petition involves the alleged violation of his prior plea agreements which was construed to be a Double Jeopardy claim, therefore, Petitioner has not

18

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

exhausted his other claims in state court.  Ignoring the procedural deficiencies of his claims, the Court will still address the merits of these claims.

According to the Supreme Court, recidivist statutes do not increase the penalty imposed for an earlier conviction, rather, they constitute a stiffened penalty for the current crime.  Witte v. United States, 515 U.S. 389, 400 (1995).  The Ninth Circuit has directly held that the recidivist statutes, like California's Three Strikes law, do not violate the Ex Post Facto clause. United States v. Kaluna, 192 F.3d 1188, 1199 (9th Cir. 1999); see also Weaver v. Graham, 450 U.S. 24, 30 (1981).  In Kaluna, the Ninth Circuit noted that so long as California's Three Strikes law was on the books at the time of the current offense, then there was no Ex Post Facto problem.  192 F.3d at 1199.  Kaluna is dispositive -- Petitioner's current offense occurred in 1999 and the Three Strikes law was enacted in 1994.  Therefore, Petitioner's claim of an ex post facto violation is meritless.  Furthermore, Petitioner's claim of a due process violation equally lacks merit.  The Supreme Court has upheld the using of pre-1994 convictions in California and has not found a due process problem.  See e.g., Ewing v. California, 538 U.S. 11, 27-31 (2003) (upholding the use of convictions in 1984, 1988, 1992, and 1993 in imposing California's Three Strikes law); see also Andrade, 538 U.S. at 72-77 (same, upholding use of convictions in 1982, 1988, 1990, and 1991).  While these cases did not specifically address the due process clause and California's Three Strikes law, they are factually similar because those cases also used pre-1994 convictions, and the courts did not find a due process problem.  Thus, there has been no indication that using such prior convictions violates due process.  Therefore, the Court finds that Petitioner's claims that the use of his prior convictions violates both the due process and ex post facto clauses of the Constitution to be meritless.

Accordingly, Petitioner's claim for habeas relief -- based on his allegation that his current conviction and sentence are invalid due to the application of California's Three Strikes law -- is denied.

//

**C.      Current Sentence Constitutes Cruel And Unusual Punishment**

19

United States District Court
For the Northern District of California

1

### 1.   Background

Petitioner's conviction for first-degree burglary and the finding that he had suffered two prior strikes under California's Three Strikes law subjected him to a sentence of twenty-five years to life in prison.  Petitioner claims that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment.  (Pet. at 5, Ex. B.)

### 2.   Applicable Federal Law

A criminal sentence that is significantly disproportionate to the crime for which the defendant was convicted violates the Eighth Amendment.  See Solem v. Helm, 463 U.S. 277, 303 (1983) (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment).  "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare."  Id. at 289-90 (citation and quotation marks omitted) (emphasis in original).  The Eighth Amendment prohibition on cruel and unusual punishment "does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (quoting Solem, 463 U.S. at 288, 303) (Kennedy, J., concurring).[6]  Under this proportionality principle, the threshold determination for the court is whether a petitioner's sentence is one of the rare cases in which a comparison of the crime committed and the sentence imposed leads to an inference of gross

---

[6] In analyzing this claim the Court must turn to clearly established federal law during the time of the relevant state court decision, which is the California Supreme Court's summary denial of the petition for review on July 17, 2002.  See Williams, 529 U.S. at 412.  The Court "looks through" the unexplained California Supreme Court decision to the last reasoned state court decision -- the Superior Court's opinion, which was also issued in 2002.  Shackleford, 234 F.3d at 1079.  At that time, no majority opinion emerged in Harmelin on the question of proportionality, and so Justice Kennedy's view -- the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime -- was considered the holding of the Court.  See United States v. Bland, 961 F.2d 123, 128-29 (9th Cir. 1992).  This Court notes that since 2002, the Supreme Court has clarified its decision in Harmelin and confirmed that Justice Kennedy's proportionality principle is clearly established law.  See Ewing, 538 U.S. at 23 (applying the Harmelin standard); United States v. Carr, 56 F.3d 38, 39 (9th Cir. 1995); see also United States v. Dubose, 146 F.3d 1141, 1146-47 (9th Cir. 1998) (after Harmelin Eighth Amendment forbids "at most" only sentences that are "grossly disproportionate").

United States District Court

For the Northern District of California

disproportionality.  Bland, 961 F.2d at 129 (quoting Harmelin, 501 U.S. at 1005).  Only if such

an inference arises does the court proceed to compare a petitioner's sentence with sentences in

the same and other jurisdictions.  See Harmelin, 501 U.S. at 1004-05; Bland, 961 F.2d at 129.

The threshold for an "inference of gross disproportionality" is quite high.  See, e.g.,

Harmelin, 501 U.S. at 1005 (mandatory sentence of life without possibility of parole for first

offense of possession of 672 grams of cocaine did not raise inference of gross

disproportionality).  In addition, a court may take into account the State's interest not only in

punishing the offense of conviction, but also its interest "'in dealing in a harsher manner with

those who [are] repeat[] criminal[s].'"  Bland, 961 F.2d at 129 (quoting Rummel v. Estelle, 445

U.S. 263, 276 (1980)).

### 3.   **Analysis**

The Superior Court rejected Petitioner's claim that his twenty-five years to life sentence

for first-degree burglary and for being a repeat offender with at least two prior strikes was

constitutionally disproportionate, stating:

> It has been determined that a sentence is cruel or unusual punishment if it
> "is so disproportionate to the crime for which it is inflicted that it shocks the
> conscience and offends fundamental notions of human dignity." (People v.
> Martinez (1999) 71 Cal.App.4th 1502.)  In assessing whether a punishment is
> cruel or unusual a court should "(1) consider 'the nature of the offense and the
> offender,' (2) compare the punishment to other punishments imposed by the same
> jurisdiction for more serious offenses, and (3) compare the punishment to other
> punishments imposed by other jurisdictions for the same offense." (Id. at 1510.)
>
> Focusing on all of these factors, Petitioner has failed to show that his
> sentence of 25 years to life is disproportionate to the crimes for which he was
> sentenced.  Petitioner was  sentenced for a residential burglary (Penal Code
> § 460(a)) and this sentence was then enhanced due to his prior convictions for
> forcible lewd conduct (Penal Code § 288(b) and another residential burglary.
> (Penal Code § 460(a)).
>
> When compared with other cases and other statutes, it is clear that
> Petitioner's sentence was an appropriate one for a repeat offender.  (See Martinez,
> supra, 71 Cal.App.4th 1502 and People v. Goodwin (1997) 59 Cal.App.4th 1084.)
> In light of all this, this Court cannot conclude Petitioner's sentence was cruel
> and/or unusual punishment.

Resp't Ex. I at 3.

Petitioner argues that he "received a life term predicated upon an offense in which no

21

victim was injured nor threatened with injury and which involved little or no pecuniary

damage." (Traverse at 41.)  Petitioner further argues that his sentence, as compared to that for

more "violent felonies resulting in serious injury and is some cases [in] death," is

disproportionate.  (Id.)  However, as the Superior Court noted, Petitioner's sentence of twenty-

five years to life under California's Three Strikes law punishes not only his current offenses, but

also his recidivism.  See Resp't Ex. I at 3 (citing People v. Martinez, 71 Cal. App. 4th 1502

(1999)).

When viewed in light of his criminal history and current felony offense, the Court finds

that Petitioner's case is not that "rare case in which a threshold comparison of the crime

committed and the sentence imposed leads to an inference of gross disproportionality."

Harmelin, 501 U.S. at 1005.   Furthermore, the Superior Court reasonably applied the gross

disproportionality standard in rejecting Petitioner's Eighth Amendment claim.  The court

considered the current offense of a residential burglary and Petitioner's strike convictions which

included a lewd and lascivious conviction and another residential burglary.  The court

determined the record supported the finding that "[w]hen compared with other cases and other

statutes, it is clear that Petitioner's sentence was an appropriate one for a repeat offender."

Resp't Ex. I at 3.  The court reasonably concluded the sentence was not unconstitutionally

disproportionate in light of his current offense and criminal history.  See id.  Therefore, the

Superior Court's rejection of Petitioner's claim was not contrary to or an unreasonable

application of clearly established federal law as determined by the Supreme Court.  See 28

U.S.C. § 2254(d); see, e.g., Rummel, 445 U.S. at 284-85 (upholding life sentence of recidivist

convicted of fraudulent use of credit card for $80, passing forged check for $28.36 and

obtaining $120.75 under false pretenses); Harmelin, 501 U.S. at 996 (upholding sentence of life

without possibility of parole for first offense of possession of 672 grams of cocaine).[7]

---

[7]  See, e.g., Ewing, 538 U.S. at 29-30 (upholding sentence of twenty-five years to life for
recidivist convicted most recently of grand theft); Harris v. Wright, 93 F.3d 581, 584 (9th Cir. 1996)
(sentence of life without parole for fifteen-year-old murderer does not raise inference of gross
disproportionality); Carr, 56 F.3d at 39 (sentence of twenty-two years upon conviction for sale of

United States District Court

For the Northern District of California

Accordingly, Petitioner is not entitled to the writ on his Eighth Amendment claim.

### D.     Ineffective Assistance of Appellate Counsel

#### 1.     Background

Petitioner argues that he received ineffective assistance of appellate counsel because his attorney did not raise his Eighth Amendment claim on direct appeal.  (Pet. at 5, Ex. B.)

#### 2.     Applicable Federal Law

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  See Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).[8]  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984).  Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986).  A state criminal defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal.  Miller, 882 F.2d at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849).

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d at 1434 n.10.  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.  See Miller, 882 F.2d at 1434 (footnote and citations omitted).  Appellate counsel therefore will frequently remain above an objective standard of competence

---

66.92 grams of cocaine base with enhancement under Federal Sentencing Guidelines' career offender provision for two previous convictions for minor drug sales was not grossly disproportionate).

[8]  Although the right to the effective assistance of counsel at trial is guaranteed to state criminal defendants by the Sixth Amendment as applied to the states through the Fourteenth Amendment, see Lucey, 469 U.S. at 392, the Sixth Amendment does not address a defendant's rights on appeal; the right to effective state appellate counsel is derived purely from the Fourteenth Amendment's due process guarantee, see id.

and have caused his client no prejudice for the same reason -- because he declined to raise a weak issue.  See id.

### 3.    Analysis

Petitioner's ineffective assistance of appellate counsel claim fails with the predicate claim.  There is no merit to Petitioner's Eighth Amendment claim that his sentence amounted to cruel and unusual punishment.  Appellate counsel thus did not engage in deficient performance by failing to argue that the sentence violated the California constitutional right to be free of cruel or unusual punishment, because that argument also would have been futile as shown by the Superior Court's rejection of it.  Neither the federal nor state constitutional claims would have succeeded, so there was no deficient performance in failing to make those arguments.  There also was no prejudice resulting from the failure to make the futile argument.  The Superior Court's rejection of the ineffective assistance of appellate counsel claim was not contrary to or an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d).

Accordingly, Petitioner is not entitled to habeas relief on this claim.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED as to all claims.  The Clerk of the Court shall enter judgment in favor of Respondent, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED:  September 30, 2005

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge